UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

SCOTT ROY HEATH,

    Petitioner,    Case No. 1:17-cv-629

v.            Honorable Janet T. Neff

SHIRLEE HARRY,

    Respondent.
_____/

# **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

  I.   Factual allegations

Petitioner Scott Roy Heath is presently incarcerated with the Michigan Department of Corrections at the West Shoreline Correctional Facility in Muskegon Heights, Michigan. Petitioner is serving the following concurrent sentences: (A) 1 year, 2 months to 5 years for attempted human trafficking of a minor for forced labor, MICH. COMP. LAWS § 750.462e(b); and (B) 1 year, 2 months to 5 years for unlawfully driving away an automobile, MICH. COMP. LAWS § 750.413. Plaintiff entered pleas of guilty to these offenses in the 23rd Circuit Court for the State of Michigan.

Petitioner's constitutional challenges do not relate to his convictions or his sentences as imposed; rather, they relate to his eligibility for parole. In Michigan, generally, an inmate is eligible for parole when the inmate has served a period of time equal to the minimum sentence imposed by the court for the crime of which he was convicted, less good time and disciplinary credits. MICH. COMP. LAWS § 791.234.

It appears that Petitioner was first eligible for parole on April 6, 2017.[1] In anticipation of that eligibility date, on November 28, 2016, Petitioner was interviewed by Michigan Parole Board member Anthony King. (Pet'r's Br., ECF No. 1, PageID.4.) Mr. King referred Petitioner for a consultation with Kirk W. Narmore, a Qualified Mental Health Professional on staff at the Muskegon Temporary Correctional Facility who oversees the Michigan Sex Offender Program (MSOP). (*Id*.) Dr. Narmore concluded that Petitioner's crime was a

---

[1] According to the Michigan Department of Corrections (MDOC) Offender Tracking Information System (OTIS), Petitioner's "Earliest Release Date" is April 6, 2017. http://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdoc Number=960527. This Court takes judicial notice of the information provided by a search of the MDOC OTIS website with regard to Petitioner. *See, i.e. Carpenter v. Mich. Dep't of Corr. Time Computation Unit*, No. 1:13-cv-313, 2013 WL 1947249 *1 n.1 (W.D. Mich. May 9, 2013); *Ward v. Wolfenbarger*, 323 F.Supp.2d 818, 821–22 n. 3 (E.D. Mich. 2004).

predatory sex crime and that Petitioner should successfully complete the MSOP before he could be paroled. (*Id.*, PageID.4-5.)

On February 6, 2017, Michigan Parole Board members Anthony King and Michael Egan signed a Parole Board Notice of Decision denying parole (*Id.*, PageID.5) because "[t]he Parole Board lacks reasonable assurance that the prisoner will not become a menace to society or to the public safety and denial of parole is warranted . . . ." (Pet'r's Br. Appendix B, ECF No. 1, PageID.15.) The Notice of Decision indicated that Petitioner was awaiting "programming that might lower his risk to sexually re-offend[,]" presumably the MSOP. (*Id.*) Petitioner's parole status will be reconsidered on April 6, 2018. (*Id.*)

The procedure followed by the Michigan Parole Board tracks the required procedure as specified in MICH. COMP. LAWS § 791.235. Nonetheless, Petitioner contends the denial of parole violated his Fourteenth Amendment due process rights because: (1) "he was denied parole after it was determined he had a high probability of parole[;]" (2) he had a "liberty interest to participate in [the] MSOP 'before' a parole board interview[;]" and (3) "it was arbitrarily determined that he participate and successfully complete [the MSOP] before he is eligible for release . . . ." (Pet., ECF No. 1, PageID.2.)

II. Petitioner's claims may be raised in a habeas corpus petition

If Petitioner were to prevail on his second or third claims (if the Court ordered that Petitioner has a due process right to participate in the MSOP before the parole interview or if the Court determined the Parole Board could not require Petitioner to complete the MSOP before he could be released on parole) it would not necessarily impact the fact or duration of his confinement. In *Wilkinson v. Dotson*, 544 U.S. 74, 79-80 (2005), the Court determined that constitutional challenges to the fact or duration of confinement, though they might fall within the broad language

3

of a § 1983 claim, could only be brought in a habeas corpus action because such challenges lie at the core of habeas corpus, the "more specific . . . 'instrument to obtain release from [unlawful] confinement.'" But, where the prevailing inmate would be entitled to "at most a new parole hearing at which . . . parole authorities may, in their discretion, decline to shorten his prison term[,]" the inmate's claims are cognizable under § 1983. *Id*. at 82.

Because Petitioner seeks the same sort of relief in his second and third claims, *Wilkinson* permits him to bring those claims under § 1983. But, *Wilkinson* does not require him to do so; § 1983 claims and habeas corpus claims are not mutually exclusive. *Terrell v. United States*, 564 F. 3d 442, 446 n.8 (6th Cir. 2009); *Adams v. Bradshaw*, 644 F.3d 481, 483 (6th Cir. 2011). Accordingly, though Petitioner's second and third claims may reside at the margins, rather than the core, of habeas corpus, this Court has jurisdiction to consider them.

III. <u>AEDPA standard</u>

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court

proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

    IV.    Exhaustion

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

In this instance, Petitioner has not presented his federal constitutional claims to any level of the state courts or even the Parole Board. Under relatively recent statutory and rule amendments by the Michigan Legislature and Michigan Supreme Court, respectively, a prisoner no longer has an ability to appeal a parole denial under state statute. The former version of Mich. Comp. Laws § 791.234(8) provided that the grant or denial of parole by the Michigan Parole Board could be appealed to the circuit court by the prisoner, prosecutor or victim. *See* MICH. COMP. LAWS § 791.234(8) (West. 1999). The new version eliminated the ability of a prisoner to appeal a parole denial, and provides only that a grant of release on parole may be appealed by the

5

prosecutor or the victim. *See* MICH. COMP. LAWS § 791.234(11) (as amended by 1999 Mich. Pub. Acts 191). The legislation was approved on November 24, 1999. Following the lead of the Michigan Legislature, the Michigan Supreme Court amended Michigan Court Rule 7.104, effective March 10, 2000, eliminating the provisions regarding the methods by which a prisoner could appeal a parole denial. *See* MICH. CT. R. 7.104(D)(1), (2)(a). However, certain types of parole denial claims involving radical defects in legal process may be cognizable in state habeas corpus proceedings or by complaint for an order of mandamus. *See Morales v. Michigan Parole Board*, 676 N.W.2d 221, 229-30 (Mich. Ct. App. 2003), *lv. app. denied* 682 N.W.2d 90 (Mich. 2004). With respect to claims such as the claims Petitioner raises in his petitioner, however, it appears that the Michigan courts provide no review.

Consequently, Petitioner appears to have no available state court remedy in which to exhaust his claims. Even if he did have a method to challenge the decision, such as a state writ of habeas corpus or mandamus, *see Morales*, 676 N.W.2d at 229-30, the Court could still deny his action on the merits. *See* 28 U.S.C. § 2254(b)(2).

   V. <u>State law violations</u>

Petitioner suggests that he cannot be required to complete the MSOP because, under state law, the crimes of which he was convicted are not sex offenses. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, RULES GOVERNING HABEAS CORPUS CASES). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5;

6

*Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Petitioner's suggestion that the MDOC and/or Parole Board failed to follow state statutes or regulations or MDOC policies when compelling him to complete the MSOP is not cognizable on habeas review.

      VI.     <u>Due process</u>

Petitioner claims that he was deprived of procedural due process by the decision to deny his parole. To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*,

the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Plaintiff has served his 5-year maximum sentence, he has no reasonable expectation of liberty. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The Michigan Parole Board's failure or refusal to consider Plaintiff for parole, therefore, implicates no federal right.

VII.  Substantive due process

Because there is no liberty interest to protect, Petitioner does not have procedural due process protections with respect to parole. Nonetheless, "substantive due process protects inmates from arbitrary denials of parole based on impermissible criteria such as race, political beliefs or frivolous factors, such as eye color, even where a prisoner may not have a protected liberty interest." *Mayrides v. Chaudhry*, 43 F. App'x 743, 746 (6th Cir. 2002). In arguing that the Parole Board has acted arbitrarily in requiring Petitioner to complete the MSOP, Petitioner effectively alleges substantive due process violation.

To demonstrate constitutionally arbitrary conduct prohibited by substantive due process, Petitioner must show that the Parole Board's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Hampton v. Hobbs,* 106 F.3d 1281, 1288

8

(6th Cir. 1997); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n.4 (6th Cir. 1995). Petitioner has failed to allege facts amounting to arbitrary or egregious conduct here. Instead, Petitioner has alleged facts showing only that the doctor who interviewed him concluded that Petitioner's human trafficking conviction warranted his completion of the MSOP to improve Petitioner's chances to avoid "re-offending."[2] That conclusion neither shocks the conscience nor does it constitute an egregious abuse of government power. Accordingly, Petitioner has failed to demonstrate a violation of his substantive due process rights.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily

---

[2] The Michigan Sex Offender Program mission statement notes: "[o]f central importance is decreasing the risk of sexual re-offense . . . ." http://www.michigan.gov/corrections/0,4551,7-119-68854_68856_74016---,00.html.

dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.

Dated: August 9, 2017  /s/ Janet T. Neff
Janet T. Neff
United States District Judge

10